UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHERI L. SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) No. 1:12-cv-00163-SEB-DML | |
| MICHAEL ASTRUE Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Sheri L. Simpson filed an application for social security benefits on July 2, 2008 with an alleged disability onset date of April 1, 2005. R. at 74. Her application was denied initially and upon reconsideration. On July 20, 2010, Plaintiff appeared before an Administrative Law Judge (the "ALJ") for an administrative hearing. On October 15, 2010, the ALJ issued an amended decision[1] finding that Plaintiff was not disabled and, thus, denied Plaintiff's application for benefits. This decision became final on December 15, 2011 when the Appeals Council denied Plaintiff's request for review.

For the reasons explained in this Entry, the Commissioner's decision must be <u>REMANDED FOR FURTHER PROCEEDINGS</u>.

**I.   Factual Background**

Plaintiff was 42 years old at the time of the ALJ's decision and lives with her two adult daughters. She obtained her high school equivalency degree ("GED") in 1986 and an accounting

---

[1] The ALJ apparently issued a decision on October 13, 2010 but issued another decision after considering a newly submitted opinion from one of Plaintiff's physicians. For purposes of this entry, we will be considering the sufficiency of the ALJ's amended decision.

certificate in 1995. R. at 95. Plaintiff's alleged disability onset date was April of 2005 and Plaintiff has not sought work since that time. She testified that had a difficult time sleeping. R. at 277. During the day, Plaintiff testified that she cleaned her house (taking breaks approximately every 15-20 minutes), spent time with her children and grandchildren, played euchre, and watched television. R. at 277-78. She testified that she did not have difficulty paying attention to the television, or with showering or dressing herself. Id.  Plaintiff's application for social security benefits alleged that the following impairments limited her ability to work: anemia/chronic fatigue, chronic back pain/ extreme dyspnea with exertion. R. at 90. Plaintiff's history with regard to these ailments is discussed below.

Although Plaintiff's application lists a disability onset date in 2005, the record is markedly sparse prior to 2008. Plaintiff testified that she did not seek out treatment often because of a lack of health insurance. R. at 285. In early 2008, Plaintiff began seeking treatment for cold-like symptoms, including cough, headaches, congestion, wheezing. In March 2008, Plaintiff saw a nurse practitioner for cold symptoms and wheezing. At that appointment, the nurse practitioner also noted that Plaintiff's legs revealed "trace" swelling. R. at 190-91. Plaintiff also saw Dr. Steven Gatewood, who completed a form for food stamp assistance. Dr. Gatewood noted that Plaintiff was permanently unable to work due to chronic fatigue, anemia, shortness of breath, and back pain. R. at 216.

Throughout the rest of 2008, Plaintiff sought treatment several times for cold like symptoms and/or gastrointestinal issues. R. at 108, 122-124, 135-44, 169-71. She listed medications for her anemia as well as for pain and spasms on her application for benefits. She also indicated that she used an inhaler to assist with her breathing. R. at 94.

A state agency physician reviewed Plaintiff's medical evidence in August 2008 and opined that she could perform light work activity with some environmental limitations. R. at 127-33. The physician opined that Plaintiff was "partially credible" but that the degree of limitation that Plaintiff alleged was not supported. R. at 131.

In July, 2010, Plaintiff again sought treatment for cold symptoms (sore throat and cough) and was released from the emergency room with a prescription for an antibiotic. R. at 218-25. In August 2010, Dr. Gatewood filled out a medical statement regarding Plaintiff's heart failure for purposes of her social security benefit application. He indicated that Plaintiff could stand for 15 minutes at a time, sit for 30 minutes at a time, and frequently or occasionally lift 10 pounds. He indicated that Plaintiff could sit for eight hours and stand or walk for an hour during an 8 hour work day. He also opined that Plaintiff should elevate her legs "occasionally" throughout the day. R. at 243. In October 2010, Plaintiff again sought treatment for cold symptoms. R. at 230-33.

## II.     Applicable Law

To be eligible for SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and

laboratory findings, not only by a claimant's statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. Id. At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments consists of medical conditions defined by criteria that the Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. An RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy. The claimant bears the burden of proof at steps one through four, and at step five the burdens shifts to the Commissioner. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error.  Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)).

### III.    The ALJ's Decision

At Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 2, 2008, the application date.  At Step Two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease; congestive heart failure; anemia; obesity; the residual effects of a car accident (back and knee pain); and depression.  The ALJ found that Plaintiff's migraine headaches were not a medically determinable impairment and that, even if they were, they were not considered severe.  At Step Three, the ALJ expressly considered Listings 1.02, 1.04, 3.02, 4.02, 4.03, 7.02, 12.04, and Plaintiff's obesity but found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the conditions in the Listing of Impairments.

In terms of the RFC, the ALJ found that Plaintiff had capability to perform a range of light work.  In coming to this conclusion, the ALJ engaged in a two-step process by which he determined that Plaintiff's impairments could indeed reasonably be expected to produce Plaintiff's symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC.  Although the ALJ went into considerable detail regarding his reasoning for

Plaintiff's RFC, in sum, he stated that the finding was supported by Plaintiff's admitted daily activities, her "non-existent" and/or "conservative" treatment history, and the lack of significant clinical or objective medical findings, the opinions of the physicians employed by the State Disability Determination Services, and by objective medical evidence. R. at 24.

At Step Four, the ALJ found that Plaintiff had no past relevant work. At Step Five, considering Plaintiff's age, work experience, and education (which are not considered at step four), and her RFC, the ALJ found that there are jobs within the national economy that Plaintiff could perform and, thus, determined that Plaintiff had not been disabled.[2]

## IV.     Discussion

Plaintiff has asserted three arguments on the basis of which she insists remand is necessary: (A) There is not substantial evidence to support the ALJ's residual functional capacity assessment used at Step Five or the ALJ's hypothetical questions to the vocational expert used to support his decision at Step Five; (B) The ALJ did not sufficiently consider treating physician Dr. Gatewood's opinion that Plaintiff needed to elevate her legs occasionally during an eight hour workday; and (C) The ALJ's adverse credibility finding was not supported by substantial evidence. We address these arguments below.

### A.     The ALJ's Consideration of Plaintiff's Difficulties with Concentration, Persistence, or Pace

In Step Three of the ALJ's assessment, Plaintiff was found to have moderate difficulties with concentration, persistence, or pace. R. at 19. At the hearing, the ALJ posed a number of hypothetical questions to Ray Burger, a testifying vocational expert. In the hypothetical posed to the vocational expert, the ALJ listed Plaintiff's other limitation but did not expressly ask the vocational expert to consider that Plaintiff had such "moderate difficulties with concentration,

---

[2] Specifically, the vocational expert found that an individual of Plaintiff's age, education, work experience, and RFC could perform the following occupations: inspector, packager, and assembler. R. at 25.

persistence, or pace." Instead, the ALJ asked the expert to consider that "the work would need to be simple and repetitive in nature, but with the ability to attend, concentrate, and persist for two hours at a time." R. at 288-89. Plaintiff argues this failure to pose her "moderate difficulties with concentration, persistence, or pace" to the vocational expert or to consider it for purposes of the ALJ's RFC warrants remand.

In support of her position, Plaintiff cites the Seventh Circuit's decision in O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010). In O'Connor-Spinner, the Court held that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the [vocational expert's] attention on these limitations and assure reviewing courts that the [vocational expert's] testimony constitutes substantial evidence of the jobs a claimant can do." Id. at 620-21. The Court explained that "the most effective way to ensure that the [vocational expert] is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." 627 F.3d at 619. There is an exception to this rule where the vocational expert has independently reviewed the medical record or heard testimony addressing the claimant's limitations. Id. The Court also acknowledged that it had allowed an ALJ's hypothetical to stand despite omitting the terms "concentration, persistence, and pace" where "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform," or where the claimant's underlying conditions were included in the hypothetical. Id. At 619-20 (citing Simila v. Astrue, 573 F.3d 503, 522 (7th Cir. 2009); Arnold v. Barnhart, 473 F.3d 816 (7th Cir. 2007)(allowing a hypothetical that restricted claimant to low-stress, low production work when the claimant's limitations arose from stress-induced headaches, frustration and anger.); Johansen

v. Barnhart, 314 F.3d 283 (7th Cir. 2002)(allowing a hypothetical that limited the claimant to "repetitive, low-stress" work); Sims v. Barnhart, 309 F.3d 424 (7th Cir. 2002)).

The Commissioner does not respond to Plaintiff's invocation of the O'Connor-Spinner decision. Instead, the Commissioner simply rejoins that it was "extremely deferential" for the ALJ to find that Plaintiff's mental impairments were "severe" in light of the complete lack of evidence regarding her inability to sustain concentration of attention. Thus, the Commissioner argues that the ALJ's RFC is supported by substantial evidence and that the ALJ's questioning of the vocational expert does not warrant remand. However, it is not the Commissioner's place to question the findings of the ALJ or to defend the ALJ's ultimate conclusion based on its own alternative reasoning when the ALJ himself did not rely on such. Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ"). The ALJ's hypothetical not only omitted reference to Plaintiff's moderate difficulties with concentration, persistence, or pace, but implied that Plaintiff indeed *had* the capability to concentrate for up to two hours. Thus, because the ALJ's hypothetical did not supply the vocational expert with adequate information regarding Plaintiff's limitations, the expert was unable to determine whether there were jobs that Plaintiff could perform. Thus, remand is required.[3]

### B.     The ALJ's Consideration of Dr. Gatewood's Opinion

Plaintiff also argues that the ALJ failed to properly consider Dr. Gatewood's opinion that Plaintiff needed to occasionally elevate her legs while working. As noted above, Dr. Gatewood

---

[3] Plaintiff also contends that the ALJ's RFC is not supported by substantial evidence because her moderate difficulties with concentration, persistence, or pace, which the ALJ found at Step Three, were not reflected in the RFC. O'Connor-Spinner does not address whether these limitations must also be referenced in an RFC. However, because we are remanding the case, the ALJ is instructed to include in his consideration these limitations for purposes of his RFC.

had indicated that Plaintiff should elevate her legs occasionally during an eight hour work day referencing that requirement in a form he completed related to her social security application. With regard to this opinion, the ALJ stated:

> Dr. Gatewood completed a prepared form indicating his patient can stand fifteen minutes at one time, sit thirty minutes at one time, lift ten pounds occasionally and frequently, and needs to occasionally elevate her legs during an eight-hour workday. In addition, he notes that during an eight-hour day, the claimant can sit eight hours, stand one hour and walk one hour. As discussed above, the treatment records do not reveal any indication of restrictions. In addition, the course of treatment pursued by this doctor has not been consistent with what one would expect if the claimant had the significant restrictions he now notes. Most significantly, the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were as limited as he now indicates. Finally, this opinion is given little weight because it is from a primary care physician and not with a specialty related to the claimant's impairments, and is generally inconsistent with the objective medical evidence as a whole.

R. at 24.

As Plaintiff's treating physician, Dr. Gatewood's opinion about the nature and severity of a claimant's impairment(s) is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Moss v. Astrue, 555 F.3d 556, 560 (7th Cir. 2009). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Id. at 561.

We agree with Plaintiff that the ALJ did not sufficiently explicate his reason for giving Dr. Gatewood's opinion "little weight." Although there is scant evidence regarding any restriction that would cause Plaintiff to have to elevate her legs, there is nothing in the record that is *inconsistent* with that opinion. Plaintiff's edema was indeed noted by a nurse practitioner in

March 2008. R. at 190-91. Furthermore, the fact that Dr. Gatewood has not pursued additional treatment other than his recommendation that Plaintiff elevate her legs occasionally does not diminish the veracity of that recommendation. Finally, the ALJ does not specify what type of "significant clinical and laboratory abnormalities" he states one would expect to see if the Plaintiff actually did have to elevate her legs as Dr. Gatewood's opinion states. In light of these insufficiencies, we remand on this alternative basis as well.

  C. The ALJ's Credibility Finding

Finally, Plaintiff challenges the ALJ's adverse credibility determination. However, in light of our determination that the flaws in the ALJ's decision make remand necessary, we need not assess whether the ALJ's reasons in support of his adverse credibility determination were so "patently wrong" as to require remand. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010); Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009)).

  V. Conclusion

For the reasons detailed herein, this case is REMANDED to the ALJ for further consideration in line with our rulings. The ALJ shall reassess Plaintiff's RFC in light of Dr. Gatewood's recommendation that Plaintiff elevate her legs occasionally throughout the work day and Plaintiff's limitations in terms of concentration, persistence, or pace. The ALJ shall incorporate such limitations into the hypothetical question posed to the vocational expert.

  IT IS SO ORDERED.

Date: 03/28/2013

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

J. Frank Hanley, II
lauras@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov